**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TRACEY HAMILTON,**<br>*Plaintiff,*<br>v.<br>**VETERANS MULTI-SERVICE CENTERS, INC.,**<br>*Defendant.* | **Case No. 2:25-cv-03744-JDW** |

**MEMORANDUM**

If an employee underperforms during her probationary period, an employer can choose not to retain her. That's true even if the employee made a complaint about sexual harassment shortly before the end of the probationary period. That's what happened in this case. Tracey Hamilton worked at Veterans Multi-Service Centers, Inc. ("VMC"). Near the end of her probationary period, she complained that a client had harassed her. She was fired eight days later. But VMC had a reason for its decision unrelated to Ms. Hamiton's complaint, and nothing prevented it from acting on that reason. I will therefore grant VMC's motion for summary judgment.

## I. BACKGROUND

### A. Factual History

VMC provides programs and assistance to veterans of all wars and conflicts. On March 4, 2024, VMC hired Ms. Hamilton as a Case Manager in the Supportive Service for

Veterans Families department. As part of her position, she reported directly to the Program Director, Luvanda "Vandy" Rider, and the Program Coordinator, Christina Binder. Under VMC policy, Ms. Hamilton's employment carried a 90-day probationary period during which her supervisors and VMC evaluated whether to retain her long-term.

On April 26, 2024, an incident occurred between Ms. Hamilton and a VMC client, J.L. Ms. Hamilton encountered J.L. when he came to her floor to request to see his case manager. While J.L. remained on the floor, Ms. Hamilton went into the kitchenette to fill her water bottle. As Ms. Hamilton bent over to use the water cooler, J.L. came up behind her and placed "[h]is crotch to [her] behind." (ECF No. 27-6 at 89.) Ms. Hamilton returned to her desk and shared the incident with a coworker. Later that same day, she emailed Ms. Rider to report the incident and cc'd Ms. Binder.

In her email, Ms. Hamilton wrote that "[J.L.] made me feel very uncomfortable this afternoon. He came to my desk to ask [to speak with his case manager] … [h]e then followed behind me while I was at the water cooler. He apparently was standing behind me as I was bent over operating the cooler … He was in my personal space at an uncomfortable distance." (ECF No. 27-15 at 2–3.) She also shared that she didn't "have a problem servicing [clients] at the front desk, but there needs to be a compromise regarding coverage and the issue regarding J.L." (*Id.* at 3.) Ms. Rider responded six minutes later and told Ms. Hamilton, "I'll take care of it." (*Id.* at 2.) Ms. Hamilton met with Ms. Rider later that day to discuss the incident and told her that "J.L. was on my ass in the – at the

watercooler."[1] (ECF No. 27-6 at 105.) In response, Ms. Rider told Ms. Hamilton that Ms. Rider had dealt with sexual harassment during her time in the military.

On May 2, 2024, Ms. Rider emailed Rich Lampkins, Chief Human Resources Officer, requesting "guidance and feedback" concerning Ms. Hamilton's job performance. (ECF No. 27-14 at 2–3.) She outlined several "performance areas that lead to my decision to not retain [Ms. Hamilton]." (*Id.* at 3.) She identified that Ms. Hamilton: (1) "does not seem to understand veterans, rights and the fact we have to protect veteran information and maintain confidentiality"; (2) "lacks professionalism when responding to job coaching"; and (3) "has to repeatedly be shown where to find information and how to use technology." (*Id.* at 3.) The email also discussed several workplace incidents involving Ms. Hamilton in connection with each of the identified deficiencies.

On May 4, 2024, Ms. Rider and Ryan McGoldrick, Deputy Executive Director of Mission Execution, held a meeting with Ms. Hamilton during which they terminated her employment with VMC. They informed her that VMC decided not to retain her because it did not view her as a good fit for the role.

### B. Procedural History

On July 21, 2025, Ms. Hamilton filed suit against VMC. Her Complaint asserted claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act

[1] Ms. Rider denies having this conversation, but it doesn't matter because I'm resolving factual disputes in Ms. Hamilton's favor.

of 1964, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance. In September 2025, Ms. Hamilton filed an Amended Complaint, this time asserting only retaliation claims under Title VII and the Philadelphia Fair Practices Ordinance. VMC filed a motion to dismiss the Amended Complaint, which I denied. VMC then filed its answer, and the Parties progressed through discovery.

On June 18, 2026, VMC filed a Motion For Summary Judgment. The Motion argues that Ms. Hamilton fails to raise facts that establish a *prima facie* case of retaliation. VMC also argues that Ms. Hamilton fails to raise facts that establish its reasons for terminating her position were pretextual.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). At this stage, I do not weigh the evidence and decide the truth of the matter but instead determine only whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In opposing summary judgment, the non-moving party may not merely deny the allegations in the moving party's pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *See Scott*, 550 U.S. at 380 (citation modified); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). Instead, the nonmovant "must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

## III. ANALYSIS

The familiar *McDonnell Douglas* framework applies to Ms. Hamilton's claims for retaliation under Title VII and the PFPO.[2] To prevail on her claims, she must first establish a *prima facie* case. *See Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022). If she makes that showing, the burden shifts to VMC to articulate a legitimate, non-retaliatory reason for terminating her employment. *See id.* If VMC meets that burden, the burden shifts back to Ms. Hamilton to establish that VMC's "explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (citation modified). Although the burden of production shifts back and forth under this analysis, Ms. Hamilton always maintains the ultimate burden of persuasion. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).

---

[2] The same standards apply to the federal claim and the PFPO claim. *See Pan v. Temple Univ. Hosp., Inc.*, No. 24-2908, 2026 WL 27193, at *2 n.2 (3d Cir. Jan. 5, 2026); *Tomaszewski v. City of Philadelphia*, 460 F. Supp.3d 577, 599 (E.D. Pa. 2020).

To obtain summary judgment in this case, VMC must show Ms. Hamilton's "inability to raise a genuine issue of material fact as to either: (1) one or more elements of [her] prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997). There is no triable issue of fact in this case concerning pretext, so I will grant summary judgment on Ms. Hamilton's retaliation claim.

### A. *Prima Facie* Case

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006), *as amended* (Sept. 13, 2006). The Parties dispute whether a genuine issue of material facts exists under elements one and three.

#### 1. Protected activity

Title VII prohibits discrimination by an employer against its employees "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). This is known as the "participation clause." *Crawford v. Metro. Gov't of Nashville & Davidson County*,

555 U.S. 271, 274 (2009). Where the plaintiff participates in a proceeding against the employer's activity, she must hold an objectively reasonable good-faith belief that the activity she opposes is unlawful under Title VII. *See Moore*, 461 F.3d at 341; *Clark County v. Breeden*, 532 U.S. 268, 271 (2001). However, a plaintiff does not need to prove that the underlying conduct violated Title VII. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir.1996).

When I view the evidence in the light most favorable to Ms. Hamilton, the record shows that she held an objectively reasonable good-faith belief that she experienced sexual harassment. Her email to Ms. Rider doesn't say that J.L. engaged in sexual conduct, but it complains about personal touching in a way that a reasonable reader could infer as having a sexual nature. Then, when Ms. Rider discussed the incident with Ms. Hamilton, Ms. Rider discussed her own experiences with sexual harassment in the military, from which I infer that Ms. Rider understood that Ms. Hamilton was complaining about sexual harassment.[3] A reasonable person could believe that J.L.'s actions constituted sexual harassment, which Title VII prohibits as a form of discrimination in the workplace. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 698–99 (E.D. Pa. 2016). Complaints of harassment qualify as actions that Title VII's participation clause protect, and Ms. Hamilton engaged in that protected

[3] Ms. Rider's claim that this conversation didn't happen doesn't matter at this stage of the proceedings because I have to credit Ms. Hamilton's version of things. *See Anderson*, 477 U.S. at 255.

activity, at minimum, when she complained about J.L.'s sexual harassment to Ms. Rider. *See, e.g.*, *Larochelle*, 210 F. Supp. at 699.

### 2. Causation

To prove causation, the temporal proximity between the protected activity and an employer's adverse action is sufficient on its own if it is "unusually suggestive." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007). Where temporal proximity is not unusually suggestive, courts ask whether the proffered evidence, viewed as a whole, raises an inference of causality. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). The types of evidence that Ms. Hamilton can proffer includes "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id.* at 232–33.

There is no brightline rule for what qualifies as "unusually suggestive" temporal proximity, but the Third Circuit recognizes a period of a couple days as sufficient. *See, e.g.*, *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (two days); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Ms. Hamilton reported J.L.'s sexual harassment on April 26, and Ms. Rider acknowledged receipt that day. Six days later, Ms. Rider emailed Mr. Lampkins to discuss Ms. Hamilton's deficient job performance. She acknowledges that when she sent that email, she had made up her mind to terminate Ms. Hamilton. VMC formally terminated Ms. Hamilton employment two days later.

In sum, eight days elapsed between Ms. Hamilton's complaint and her termination. And at most, six days elapsed between Ms. Hamilton's complaint and Ms. Rider's decision to terminate her. Such a short time period qualifies as unusually suggestive. *See Jalil*, 873 F.2d at 708. Therefore, Ms. Hamilton establishes a *prima facie* case of retaliation.

**B. Legitimate, Non-Retaliatory Purpose**

Because Ms. Hamilton mounts a *prima facie* case of retaliation, the burden shifts to VMC to articulate a legitimate, non-retaliatory reason for terminating her employment. *See Canada*, 49 F.4th at 346. VMC's burden at this stage is "relatively light" and is satisfied if VMC provides "any legitimate reason for the adverse employment action." *Krouse*, 126 F.3d at 500 (citation modified). VMC does not need to prove its articulated reason motivated the adverse action. *Id.* at 500–01.

VMC articulates several legitimate, non-retaliatory reasons for terminating Ms. Hamilton's employment. Those reasons include: (1) overall job performance; (2) a client requesting assignment to a new Case Manager; (3) failure to utilize resources provided regarding VMC's policies and procedures; (4) failure to open files for a new case timely; and (5) an incident in which Ms. Hamilton objected to providing assistance to a landlord, pursuant to her job duties, with whom she had a disagreement. Each of the proffered reasons relates to Ms. Hamilton's job performance and occurred during her probationary period with VMC, making each one a legitimate basis for VMC's determination decision.

**C. Pretext**

Once an employer articulates legitimate reasons for its action, to avoid summary judgment the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious retaliatory reason was more likely than not a determinative cause of the employer's action." *Daniels*, 776 F.3d at 198 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)) (citation modified). A plaintiff may do this by either (1) circumstantially or directly discrediting the employer's proffered reason; or (2) citing evidence, circumstantial or direct, that discrimination more likely than not served as a motivating or determinative cause of the adverse employment action. *Fuentes*, 32 F.3d at 764.

To discredit the employer's proffered reason, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" providing that a reasonable factfinder could rationally find them unbelievable. *Id.* at 765. Ms. Hamilton argues that VMC's proffered grounds for her termination are inconsistent with Ms. Rider's testimony, but I disagree. Ms. Rider's deposition testimony confirmed that she decided not to retain Ms. Hamilton because "she wasn't a good fit for the agency and the work." (ECF No. 27-7.) That statement is not inconsistent with the various grounds for termination she discussed in her email on May 2, which VMC reaffirms in its summary

judgment motion. If anything, her deposition is simply a summary of the grounds she provided in her email to Mr. Lampkins.

Ms. Hamilton also makes several arguments regarding the weakness of the information on which Ms. Rider relied in making her termination decision, including criticisms of the way that Ms. Rider compared different employees' case loads. Those arguments boil down to an assertion that Ms. Rider's and VMC's proffered reasons were incorrect, but to survive summary judgment Ms. Hamilton "cannot simply show that [VMC's] decision was wrong or mistaken." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (quoting *Fuentes*, 32 F.3d at 765). The factual dispute at issue is whether discriminatory animus motivated VMC, not whether the company is "wise, shrewd, prudent, or competent." *Id.* Ms. Hamilton must show that VMC's proffered reasons were so plainly wrong that they cannot serve as the real reason for her termination. *Id.* at 1109. She fails to do so.

Finally, Ms. Hamilton fails to cite any evidence that "proves discrimination in the same way that critical facts are generally proved—based solely on the natural probative force of the evidence." *Id.* at 1111. Her best evidence is VMC's Statement Of Facts, submitted along with its summary judgment motion, in which the company concedes that at the time Ms. Rider sent her email on May 2, she had already decided not to retain Ms. Hamilton. But Ms. Rider's email reveals no evidence of discrimination. She lists the various grounds for Ms. Hamilton's termination—the same ones VMC cites in its summary

judgment motion—and states that they are "performance areas that lead to my decision [not] to retain Tracey Hamilton." (ECF No. 27-14.) To the extent Ms. Rider decided not to retain Ms. Hamilton before sending that email, it is clear she based that decision on the legitimate grounds outlined in her email. Coming to a decision regarding an employee's retention after reviewing her performance, before sharing that decision and the legitimate reasons for it to an HR representative (while also seeking advice), is not evidence of discrimination; it is a typical business decision. It is also the proper process undertaken to terminate an employee according to VMC policy.

## IV. CONCLUSION

Ms. Hamilton fails to demonstrate existence of the essential elements of her claims for retaliation under Title VII and the PFPO. I will therefore grant the summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

October 23, 2026